**DEFENDANT'S BRIEF IN SUPPORT OF ITS**
**MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. i

DEFENDANT'S BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ...... 1

I.     STATEMENT OF PERTINENT FACTS ............................................................................. 1

II.    STATEMENT OF THE QUESTIONS INVOLVED ........................................................ 7

III.   SUMMARY OF ARGUMENT ......................................................................................... 7

IV.    ARGUMENT ..................................................................................................................... 9

A.   Standard for Summary Judgment ...................................................................................... 9

B.   Plaintiff's Claims Should Be Dismissed Since She Was Not Subjected to An Adverse
     Employment Action and Therefore Cannot Establish a Prima Facie Case of Either
     Discrimination or Retaliation ......................................................................................... 10

    1.   There Is No Genuine Dispute That Plaintiff Voluntarily Resigned and She
         Therefore Was Not Subjected to An Adverse Employment Action. ..................... 12

    2.   Plaintiff Is Unable to Establish That She Was Constructively Discharged. ......... 13

C.   Plaintiff Also Cannot Establish a Prima Facie Case of Retaliation Because She Never
     Engaged in a Protected Activity. ................................................................................... 20

D.   Plaintiff Further Cannot Establish a Prima Facie Case of Retaliation Since She Is Unable
     to Create a Causal Link Between a Protected Activity and An Adverse Employment
     Action ............................................................................................................................ 21

E.   Even If Plaintiff Is Able to Establish Prima Facie Cases of Race Discrimination and
     Retaliation, Her Claims Fail Because There Is No Basis Upon Which Plaintiff Will Be
     Able to Establish Pretext ............................................................................................... 25

V.     CONCLUSION ................................................................................................................ 29

# TABLE OF AUTHORITIES

**Cases**

*Abdul-Latif v. County of Lancaster*, 990 F. Supp. 2d 517 (E.D. Pa. Jan. 2, 2014) ...................... 11

*Albright v. City of Philadelphia*, 399 F. Supp. 2d 575 (E.D. Pa. Oct. 28, 2005) ......................... 12

*Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074 (3d Cir. 1996) ......................................... 15

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ............................................................ 9, 22

*Andrews v. City of Phila.*, 895 F.2d 1469 (3d Cir. 1990) ............................................................ 15

*Atkinson v. N. Jersey Developmental*, 453 Fed. Appx. 262 (3d Cir. 2011) ........................... 11, 12

*Bartos v. MHM Corr. Servs., Inc.*, 454 F. App'x 74 (3d Cir. 2011) ............................................. 23

*Bristow v. Daily Press, Inc.*, 770 F.2d 1251 (4th Cir. 1985) ....................................................... 15

*Brooks v. CBS Radio*, 2007 U.S. Dist. LEXIS 92213, 2007 WL 4454312 (E.D. Pa. Dec. 17, 2007) ...................................................................................................................................... 14, 15

*Brooks v. CBS Radio*, 2009 U.S. App. LEXIS 18189 (3d Cir. 2009) ........................................ 14

*Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998) ....................................................... 12, 13

*Capps v. Mondelez Global, LLC*, 847 F.3d 144 (3d Cir. 2017) ................................................... 25

*Cardenas v. Massey*, 269 F.3d 251 (3d Cir. 2001) ..................................................................... 13

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ............................................................................ 9

*Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268 (2001) ........................................................... 26

*Clowes v. Allegheny Valley Hosp., Inc.*, 991 F.2d 1159 (3d Cir. 1993) ......................... 15, 16, 19

*Connors v. Chrysler Financial Corporation*, 160 F.3d 971 (3d Cir. 1998) ......................... 14, 16

*Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181 (3d Cir. 2015) ..................................................... 11

*Difiore v. CSL Behring, U.S., LLC*, 171 F. Supp. 3d 383 (E.D. Pa. Mar. 17, 2016) .................. 16

*Farrell v. Planters Lifesavers Co.*, 206 F.3d 271 (3d Cir. 2000) ................................................ 22

*Frantz v. Ferguson Enters.*, 2009 U.S. Dist. LEXIS 6241 (E.D. Pa. Jan. 26, 2009) .................. 25

*Fuentes v. Perskie*, 32 F.3d 759 (3d Cir. 1994) ................................................................... 11, 12

*Fullman v. Potter*, 254 Fed. Appx. 919 (3d Cir. 2007) ............................................................... 25

*Fullman v. Potter*, 480 F. Supp. 2d 782 (E.D. Pa. Mar. 28, 2007) ............................................ 25

*Gallagher v. Sunrise Assisted Living of Haverford*, 268 F. Supp. 2d 436 (E.D. Pa. Feb. 13, 2003) .................................................................................................................................................... 13

*Gillyard v. Geithner*, 81 F. Supp. 3d 437 (E.D. Pa. Jan. 28, 2015) ........................................... 22

*Gomez v. Allegheny Health Servs., Inc.*, 71 F.3d 1079 (3d Cir. 1995) ....................................... 12

*Goss v. Exxon Office Sys. Co.*, 747 F.2d 885 (3d Cir. 1984) ...................................................... 14

*Gray v. York Newspapers, Inc.*, 957 F.2d 1070 (3d Cir. 1992) .................................................. 15

*Grdinich v. Phila. Hous. Auth.*, 2017 U.S. Dist. LEXIS 74892, 2017 WL 2152175 (E.D. Pa. May 17, 2017) ...................................................................................................................................... 23

*Green v. Brennan*, 136 S. Ct. 1769 (2016) ................................................................................ 14

*Greer v. Mondelez Global, Inc.*, 590 Fed. Appx. 170 (3d Cir. 2014) ......................................... 15

*Griffiths v. CIGNA Corp.*, 988 F.2d 457 (3d Cir.1993) .............................................................. 11

*Hay v. GMAC Mortg. Corp.*, 2003 U.S. Dist. LEXIS 16552 (E.D. Pa. Sept. 11, 2003) ........ 14, 20

*Jackson v. Phila. Hous. Auth.*, 2015 U.S. Dist. LEXIS 69320, 2015 WL 3444244 (E.D. Pa. May 28, 2015)..........................................................................................................................26

*Jalil v. Avdel Corp.*, 873 F.2d 701 (3d Cir. 1989) ..................................................................12

*Jimmy v. Elwyn, Inc.*, 2014 U.S. Dist. LEXIS 19603 (E.D. Pa. Feb. 18, 2014) ........................21

*Jones v. McCormick & Schmick's Seafood Rests., Inc.*, 2014 U.S. Dist. LEXIS 58460, 2014 WL 1669808 (D.N.J. April 28, 2014) ..........................................................................................13

*Jones v. Sch. Dist. Phila.*, 198 F.3d 403 (3d Cir. 1999).............................................................12

*Kelly v. Drexel Univ.*, 94 F.3d 102 (3d Cir. 1996).....................................................................12

*Kier v. F. Lackland & Sons, LLC*, 72 F. Supp. 3d 597 (E.D. Pa. Dec. 17, 2014)...................26, 27

*Krouse v. Am. Sterilizer Co.*, 126 F.3d 494 (3d Cir. 1997)........................................................21

*LaRochelle v. Wilmac Corp.*, 210 F. Supp. 3d 658 (E.D. Pa. Sept. 27, 2016)..................12, 13, 14

*LeBlanc v. Hill Sch.*, 2015 U.S. Dist. LEXIS 2981, 2015 WL 144135 (E.D. Pa. Jan. 12, 2015). 21

*LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n,* 503 F.3d 217 (3d Cir. 2007).............................22

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)...............................9, 10

McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) .........................................................11

*Moore v. City of Phila.*, 461 F.3d 331 (3d Cir. 2006)..................................................................11

*Pa. State Police v. Suders*, 542 U.S. 129 (2004) ......................................................................13

*Sampath v. Concurrent Techs. Corp.*, 2008 U.S. Dist. LEXIS 25715 (W.D. Pa. Mar. 31, 2008) 22

*Sawa v. RDG-GCS Joint Ventures III*, 2017 U.S. Dist. LEXIS 109357 (E.D. Pa. July 14, 2017) ................................................................................................................................21, 22

*Sherrod v. Phila. Gas Works*, 57 F. App'x 68 (3d Cir. 2003) ...................................................13

*Stewart v. Weis Mkts., Inc.*, 890 F. Supp. 382 (M.D. Pa. 1995) ...............................................14

*Tillman v. Redevelopment Auth.*, 2013 U.S. Dist. LEXIS 147234, 2013 WL 5594701 (E.D. Pa. Oct. 11, 2013)........................................................................................................................27

*Tourtellotte v. Eli Lilly & Co.*, 2013 U.S. Dist. LEXIS 54218 (E.D. Pa. Apr. 15, 2013)............15

*Tourtellotte v. Eli Lilly & Co.*, 636 Fed. Appx. 831 (3d Cir. 2016) ...........................................11

*Waddell v. Small Tube Products, Inc.*, 799 F.2d 69 (3d Cir.1986)............................................11

*Walden v. Georgia Pacific Corporation*, 126 F.3d 506 (3d Cir. 1997).......................................20

*Wells v. Retinovitreous Assocs.*, No. 15-5675, 2016 U.S. Dist. LEXIS 80313, 2016 WL 3405457 (E.D. Pa. June 21, 2016)..........................................................................................................23

*Woodson v. Scott Paper Co.*, 109 F.3d 913 (3d Cir. 1997) .......................................................11

## Statutes

42 U.S.C.S. § 2000(e)-2(1) ...........................................................................................................10

42 U.S.C.S. § 2000e-3(a) ..............................................................................................................10

43 P.S. § 955(a).............................................................................................................................10

43 P.S. § 955(d) ............................................................................................................................10

## Rules

Fed. R. Civ. P. 56(a) .......................................................................................................................9

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LAURETTA R. KING | : | Case No. 17-cv-05026 |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION |
| | : | |
| WAL-MART.COM USA, LLC | : | |
| Defendant. | : | JURY TRIAL DEMANDED |

## DEFENDANT'S BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Defendant Wal-Mart.Com USA, LLC (hereinafter referred to as "Walmart"), by and through its undersigned counsel, Law Offices of McDonnell & Associates, P.C., submits the following Brief in support of its Motion for Summary Judgment.

## I.      STATEMENT OF PERTINENT FACTS

Plaintiff Lauretta R. King (hereinafter "Plaintiff") initiated this cause of action by filing a Complaint with this Court on or about November 7, 2017. *See* Statement of Undisputed Material Facts, ¶ 1. In her Complaint, Plaintiff alleges race discrimination and retaliation pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII") and the Pennsylvania Human Relations Act ("PHRA"). *Id.* at ¶ 2.

Plaintiff racially identifies as African-American. *Id.* at ¶ 3. Plaintiff began working at Walmart Fulfillment Center #7422 as a Human Resources Office Manager in Bethlehem, Pennsylvania in February 2016. *Id.* at ¶ 4. She was hired by Human Resources Manager Heather Hetrick (hereinafter "Manager Hetrick"). *Id.* at ¶ 5.

### A.      Plaintiff's Allegations of Race Discrimination

During her employment at the Bethlehem Fulfillment Center, Plaintiff worked with another Human Resources Office Manager named Stephanie Leith (née Wendt) (Caucasian),

who had "the same title, the same position, the same everything" as Plaintiff. *Id.* at ¶ 6. Plaintiff was supervised by Manager Hetrick (Caucasian). *Id.* at ¶ 7. Plaintiff testified that approximately two weeks into her job, she began to have issues with Ms. Leith. *Id.* at ¶ 8. Plaintiff testified that Ms. Leith "would stand behind [her] and do things behind [her] back . . . ." *Id.* at ¶ 9. She testified that Ms. Leith "would stand up and walk behind me and she would do stuff behind my back to try to make whoever is facing her laugh." *Id.* at ¶ 10. Plaintiff claims that she would "feel wave, like air behind [her]" but never actually saw what Ms. Leith was allegedly doing. *Id.* at ¶ 11. Plaintiff admitted that she only actually saw Ms. Leith making a face <u>once</u>. *Id.* at ¶ 12.

The one time Plaintiff allegedly saw Ms. Leith making a face, Plaintiff saw nothing on Ms. Leith's face that made her think the face had anything to do with Plaintiff's race. *Id.* at ¶ 13. Ms. Leith never said anything to Plaintiff that made her feel as though Ms. Leith's actions were because of her race. *Id.* at ¶ 14. Plaintiff did not believe that any of the "funny faces" Ms. Leith allegedly made were regarding her race. *Id.* at ¶ 15. Rather, Plaintiff believed that Ms. Leith made the funny faces because of how "ignorant" and "privileged" Ms. Leith was. *Id.* at ¶ 16.

Further, Plaintiff never heard Ms. Leith say anything derogatory or discriminatory about African-Americans. *Id.* at ¶ 17. Plaintiff never heard any racial slurs of any kind while working at the Bethlehem Fulfillment Center. *Id.* at ¶ 18. Plaintiff also never felt physically threatened by Ms. Leith's conduct. *Id.* at ¶ 19. In fact, she testified that Ms. Leith "would act professional when speaking and dealing with [her] personally face-to-face." *Id.* at ¶ 20.

On April 23, 2016, Plaintiff reported Ms. Leith's alleged conduct to Manager Hetrick. *Id.* at ¶ 21. Plaintiff made no allegations against Manager Hetrick; her complaints pertained to Ms. Leith only. *Id.* at ¶ 22. Plaintiff never told Manager Hetrick, nor any of her other managers, that she felt that she was being discriminated against or treated differently because of her race.

*Id.* at ¶ 23.  Nevertheless, Manager Hetrick investigated Plaintiff's complaints regarding Ms. Leith, and after interviewing several associates and managers, was unable to substantiate the complaints.  *Id.* at ¶ 24.  Plaintiff also complained to her self-proclaimed "mentor," General Manager Misty Melton, and Human Resources Divisional Manager David Alvarado, but never told them that she felt she was being treated differently based on her race.  *Id.* at ¶ 25.

Plaintiff never complained of race discrimination, even though she was trained regarding Walmart's anti-discrimination and anti-retaliation policies upon her hiring.  *Id.* at ¶ 26.  Plaintiff testified that "Wal-Mart has excellent policies and procedures, I have to give them credit."  *Id.* at ¶ 27.  She testified that she was trained to call an "800 hotline" if she felt that he or she was being discriminated or retaliated against.  *Id.* at ¶ 28.  Not only did Plaintiff never complain of race discrimination, but she testified that two of her Caucasian co-workers also "hated" Ms. Leith because Ms. Leith was "horrible" to them and "threw them under the bus in front of [Manager Hetrick] every chance she got."  *Id.* at ¶ 29.

### B.    Plaintiff's Allegations of Retaliation

Plaintiff alleges that after she complained of Ms. Leith's conduct, Manager Hetrick began to treat her differently.  *Id.* at ¶ 30.  Plaintiff alleges that Manager Hetrick retaliated against her by issuing a Coaching.[1]  *Id.* at ¶ 31.  Plaintiff received two Coachings while working at the Bethlehem Fulfillment Center.  *Id.* at ¶ 32.  The First Written Coaching was issued on July 7, 2016, three and a half months after Plaintiff complained to Manager Hetrick regarding Ms. Leith's alleged conduct.  *Id.* at ¶ 33.  Plaintiff was Coached for poor performance, including "cross training job offers not being made, job offering not being processed correctly in the system  .  .  .  , populating background checks and staffing sheets being updated, completion/followup on the medical and the needed mandatory appointment, [and]

---

[1] "Coaching" is Walmart's term for a disciplinary write-up.

accountability not being administered within the seven days of incident . . . ." *Id.* at ¶ 34.

Plaintiff did not dispute the First Written Coaching. *Id.* at ¶ 35. Plaintiff testified that she had performed the tasks before but simply "forgot" to do them. *Id.* at ¶ 36. She conceded that the First Written Coaching was legitimate. *Id.* at ¶ 37. The First Written Coaching had no impact on Plaintiff's salary or hours. *Id.* at ¶ 38.

Plaintiff received a Third Written Coaching on August 6, 2016, three and a half months after she complained about Ms. Leith's conduct. *Id.* at ¶ 39. Plaintiff received the Third Written Coaching after she provided incorrect drug testing paperwork to a manager named Jack Schippers on July 28, 2016. *Id.* at ¶ 40. Plaintiff denied distributing the incorrect paperwork, but Manager Hetrick's investigation revealed that Plaintiff had indeed provided the wrong paperwork. *Id.* at ¶ 41. Manager Hetrick and Asset Protection Manager Steve Baggett reviewed surveillance video, which showed Plaintiff handing the paperwork to Mr. Schippers. *Id.* at ¶ 42. Therefore, Plaintiff received an escalated Third Written Coaching for Integrity based on her dishonest representation of the incident. *Id.* at ¶ 43.

Plaintiff alleges that Manager Hetrick fabricated the Coaching. *Id.* at ¶ 44. However, she admitted that Manager Baggett was a "very honest man" and she would "absolutely not" have any reason to doubt his integrity. *Id.* at ¶ 45. Manager Baggett told Plaintiff that he saw her handing paperwork to Mr. Schippers on the video. *Id.* at ¶ 46. Plaintiff could not explain what papers, if any, she did give to Mr. Schippers on July 28, 2016. *Id.* at ¶ 47. At her deposition, Plaintiff claimed that another manager named "Jim" obtained the paperwork for Mr. Schippers. *Id.* at ¶ 48. However, Plaintiff never reported to Manager Hetrick that Jim had allegedly given Mr. Schippers the paperwork, and never spoke to Jim regarding the incident. *Id.* at ¶ 49.

Plaintiff testified that the Third Written Coaching had no effect on her salary, hours, schedule, or work duties. *Id.* at ¶ 50.

Plaintiff also claims that Manager Hetrick denied her request for a transfer to a floor position. *Id.* at ¶ 51. She alleges that a Caucasian co-worker named Chelsea Clauser was permitted to transfer from a floor position to a Human Resources position, and was unaware why she was unable to do the same in reverse. *Id.* at ¶ 52. On October 24, 2016, Plaintiff emailed Manager Hetrick and asked to be reassigned to a floor manager position. *Id.* at ¶ 53. Manager Hetrick advised her that there was no system for "reassignment" and invited her to apply to any open position within the Company. *Id.* at ¶ 54. Plaintiff never applied for any floor manager positions. *Id.* at ¶ 55. Plaintiff did not even check Walmart's computerized job application system to see whether there were any floor manager positions available. *Id.* at ¶ 56. Although, Plaintiff testified that "there's always jobs." *Id.* at ¶ 57. Manager Hetrick was not the manager over the floor positions, and Plaintiff never spoke to any of the higher level floor managers regarding a potential floor position. *Id.* at ¶ 58.

Plaintiff also testified that Manager Hetrick "became unkind to [her]" after she complained about Ms. Leith's conduct. *Id.* at ¶ 59. In support of this contention, Plaintiff testified that Manager Hetrick "sat in with [Ms. Leith] with her shenanigans," and "laughed with [Ms. Leith] during meetings." *Id.* at ¶ 60. Plaintiff testified that Manager Hetrick laughed during a meeting only twice. *Id.* at ¶ 61. Plaintiff was unable to specifically identify any reason why she believed that Manager Hetrick and/or Ms. Leith were laughing at her, other than the fact that she "[had] eyes" and "peripheral vision." *Id.* at ¶ 62.

Plaintiff also compared Manager Hetrick to "Hitler," stating that she "would scream at people." *Id.* at ¶ 63. However, Plaintiff testified that Manager Hetrick only screamed at other,

Caucasian employees. *Id.* at ¶ 64. Plaintiff admitted that Manager Hetrick never screamed at her, and in fact treated her more respectfully than her Caucasian counterparts. *Id.* at ¶ 65. Plaintiff had no reason to believe that Manager Hetrick ever treated her differently based on her race. *Id.* at ¶ 66.

### C. Plaintiff's Resignation

Plaintiff took a medical leave of absence related to a spine condition on August 10, 2016, four days after she received her Third Written Coaching. *Id.* at ¶ 67. Plaintiff was approved for leave through November 28, 2016. *Id.* at ¶ 68. Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission on November 7, 2016. *Id.* at ¶ 69. Plaintiff's medical doctor cleared her to return to work on November 28, 2016 since she declined surgery. *Id.* at ¶ 70. Plaintiff told her doctor "do what you have to do," and that she "understood." *Id.* at ¶ 71. Instead of returning to work, Plaintiff voluntarily resigned on November 29, 2016. *Id.* at ¶ 72. Plaintiff testified that she resigned because she did not want to work with Manager Hetrick, and noted that she had difficulty driving at times. *Id.* at ¶ 73. Plaintiff has since been approved for Social Security Disability benefits. *Id.* at ¶ 74.

Plaintiff had no plans to resign before she went on medical leave. *Id.* at ¶ 75. Plaintiff could not recall any interactions with Manager Hetrick between the time she went out on leave and the time she resigned. *Id.* at ¶ 76. Plaintiff explained that she resigned because she believed that if she got fired, she would not be able to work at Walmart again, and she wanted to finish her career with Walmart. *Id.* at ¶ 77.

There is no genuine dispute of material fact and Walmart is entitled to judgment in its favor as a matter of law.

## II.    STATEMENT OF THE QUESTIONS INVOLVED

1.    Is Walmart entitled to judgment in its favor as a matter of law since Plaintiff voluntarily resigned and is therefore unable to establish a *prima facie* case of either discrimination or retaliation?

*Suggested Answer:    Yes.*

2.    Is Walmart entitled to judgment in its favor as a matter of law since Plaintiff never engaged in a protected activity and is therefore unable to establish a *prima facie* case of retaliation?

*Suggested Answer:    Yes.*

3.    Is Walmart entitled to judgment in its favor as a matter of law since Plaintiff cannot establish a causal link between a protected activity and an adverse employment action and is therefore unable to establish a *prima facie* case of retaliation?

*Suggested Answer:    Yes.*

4.    Is Walmart entitled to judgment in its favor as a matter of law since Plaintiff adduced no evidence of pretext?

*Suggested Answer:    Yes.*

## III.    SUMMARY OF ARGUMENT

Plaintiff is unable to establish a *prima facie* case of either race discrimination or retaliation because she was not subjected to an adverse employment action. There is no dispute that Plaintiff voluntarily resigned from her employment with Walmart. Plaintiff adduced no evidence in support of her claim that she was constructively discharged, as the alleged harassment to which she was subjected was not race-based, was neither severe nor pervasive, and

did not arise to a level so intolerable that a reasonable person under the same circumstances would resign.

Plaintiff is also unable to establish a *prima facie* case of retaliation since she never engaged in a protected activity. There is no dispute that Plaintiff never complained of race discrimination. Plaintiff's complaints about her co-worker, Ms. Leith, made no reference to race whatsoever and appeared to be related to personality differences. Complaining about a co-worker with whom you do not get along does not qualify as a protected activity within the meaning of Title VII or the PHRA.

Plaintiff is further unable to establish a *prima facie* case of retaliation because she has not established a causal link between a protected activity and an adverse employment action. The three and a half month time frame between when Plaintiff initially complained and when Walmart's alleged retaliatory conduct occurred is much too far removed to be considered unusually suggestive. Plaintiff cannot establish any other legitimate basis for her belief that Manager Hetrick retaliated against her, including the lack of evidence of ongoing antagonism within that time frame.

Even if Plaintiff is able to establish a *prima facie* case of race discrimination and/or retaliation, there is no evidence upon which a reasonable factfinder could conclude that Walmart's proffered legitimate, non-discriminatory and non-retaliatory reasons for its conduct were pretext for discrimination or retaliation. Plaintiff adduced no facts that would lead a reasonable factfinder to conclude that Walmart discriminated on the basis of race. Plaintiff specifically testified that she never heard any remarks regarding her race, and that she herself did not believe that she was discriminated against based on race. In fact, Plaintiff testified that she was treated *more* respectfully than her Caucasian co-workers.

For the reasons set forth in more detail below, Walmart is entitled to judgment in its favor as a matter of law on all claims.

## IV.    ARGUMENT

### A.    <u>Standard for Summary Judgment</u>

Pursuant to Federal Rule of Civil Procedure 56, a defending party may move for the entry of summary judgment in its favor.  It is proper to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

The United States Supreme Court has explained that when deciding motions for summary judgment, trial judges must determine "the range of permissible conclusions that might be drawn" from the evidence.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 596 (1986).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) (emphasis added).

Where, as here, the non-moving party opposing summary judgment bears the burden of proof at trial on the issue for which summary judgment is sought, the non-moving party must make a showing sufficient to establish the existence of all elements essential to his case.  In essence, the non-moving party must demonstrate that there exists sufficient evidence for a reasonable jury to find in his favor.  *Anderson*, 477 U.S. at 249.  If the non-moving party fails to make such a showing with respect to any essential element of his case on which he bears the burden of proof, the moving party is entitled to summary judgment.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Indeed, if the record, "taken as a whole, could not lead a rational trier

of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citations omitted).

In this case, Plaintiff is unable to establish claims for race discrimination or retaliation under Title VII or the PHRA. Accordingly, there is no genuine issue of material fact for trial and summary judgment should be entered in Walmart's favor.

**B.**     **Plaintiff's Claims Should Be Dismissed Since She Was Not Subjected to An Adverse Employment Action and Therefore Cannot Establish a Prima Facie Case of Either Discrimination or Retaliation.**

In her Complaint, Plaintiff claims race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and Pennsylvania Human Relations Act ("PHRA"). Title VII makes it unlawful "for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C.S. § 2000(e)-2(1).[2] Title VII also makes it unlawful "for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this title, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this title." 42 U.S.C.S. § 2000e-3(a).[3]

Claims of discrimination and retaliation under Title VII and the PHRA are analyzed under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S.

---

[2] The PHRA provides: "It shall be an unlawful discriminatory practice . . . [f]or any employer because of the race, color, religious creed, ancestry, age, sex, national origin or non-job related handicap or disability . . . to refuse to hire or employ or contract with, or to bar or to discharge from employment such individual or independent contractor, or to otherwise discriminate against such individual or independent contractor with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract, if the individual or independent contractor is the best able and most competent to perform the services required. 43 P.S. § 955(a).

[3] Similarly, Section 955(d) of the PHRA forbids an employer from discriminating against an employee "because such individual has opposed any practice forbidden by this act, or because such individual has made a charge, testified or assisted, in any manner, in any investigation, proceeding or hearing under this act." 43 P.S. § 955(d).

792 (1973); *see also Tourtellotte v. Eli Lilly & Co.*, 636 Fed. Appx. 831, 841 (3d Cir. 2016) (*citing McDonnell Douglas*, 411 U.S. at 802-803); *Moore v. City of Phila.*, 461 F.3d 331, 342 (3d Cir. 2006) (applying the *McDonnell Douglas* framework to a Title VII retaliation claim).[4]

Plaintiff has the initial burden of establishing a *prima facie* case. *Atkinson v. N. Jersey Developmental*, 453 Fed. Appx. 262, 265 (3d Cir. 2011) (*citing McDonnell Douglas*, 411 U.S. at 802). Once Plaintiff establishes a *prima facie* case, "the burden of production shifts to the employer to articulate a legitimate, non-discriminatory [or non-retaliatory] reason for its decision." *Atkinson*, *supra* (citation omitted); *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 193 (3d Cir. 2015) (citation omitted) (applying the burden-shifting framework to a retaliation claim). "Once the employer meets its 'relatively light burden,' the burden of production returns to the plaintiff, who must show by a preponderance of the evidence that the employer's proffered reason is pretextual." *Atkinson*, *supra* (*citing Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994)).

To prove pretext, Plaintiff must submit evidence that "1) casts sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication; or 2) allows the factfinder to infer that discrimination was ***more likely than not*** a motivating or determinative cause of the adverse employment action." *Atkinson*, *supra* (*citing Fuentes*, 32 F.3d at 763) (emphasis added). " . . . [I]t is not enough to show that the employer made a 'wrong or mistaken' decision. *Atkinson*, *supra* (*citing Fuentes*, 32 F.3d at 765). "Rather, the plaintiff must uncover "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the employer's explanation

---

[4] Plaintiff's PHRA retaliation claims will be analyzed under the same framework. *Abdul-Latif v. County of Lancaster*, 990 F. Supp. 2d 517, 529 (E.D. Pa. Jan. 2, 2014) (*citing Woodson v. Scott Paper Co.*, 109 F.3d 913, 920 (3d Cir. 1997) (*citing Griffiths v. CIGNA Corp.*, 988 F.2d 457, 468 (3d Cir.1993); *Waddell v. Small Tube Products, Inc.*, 799 F.2d 69, 73 (3d Cir.1986)) ("The allocation of the burden of proof for both the federal and state retaliation claims follows the familiar Title VII standards.").

that would allow a reasonable factfinder to believe that the employer did not truly act for the asserted reason. *Atkinson*, *supra* (*citing Fuentes*, *supra*).[5]

> **1. There Is No Genuine Dispute That Plaintiff Voluntarily Resigned and She Therefore Was Not Subjected to An Adverse Employment Action.**

To establish a *prima facie* case of race discrimination, Plaintiff must show that "(1) she is African American; (2) she was qualified for the position; (3) she experienced an adverse employment action; and (4) similarly situated persons who are not African-American were treated more favorably." *Atkinson*, 453 Fed. Appx. at 265 (*citing Jones v. Sch. Dist. Phila.*, 198 F.3d 403, 410-11 (3d Cir. 1999)).

To establish a *prima facie* case of retaliation, Plaintiff must show that "(1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action." *Atkinson*, 453 Fed. Appx. at 266 (*citing Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir. 1989)). Therefore, both claims require a showing by Plaintiff that she was subjected to an adverse employment action. In this case, Plaintiff is unable to do so.

An "adverse employment action" is an action taken by an employer that amounts to a "significant change in employment status." *LaRochelle v. Wilmac Corp.*, 210 F. Supp. 3d 658, 690 (E.D. Pa. Sept. 27, 2016) (*quoting Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)). An adverse employment action includes "all tangible employment actions 'such as hiring, firing, failing to promote, reassignment or a decision causing significant change in benefits.'" *LaRochelle*, 210 F. Supp. 3d at 690 (*citing Sherrod v. Phila. Gas Works*, 57 F. App'x

---

[5] Plaintiff's PHRA claims will also be analyzed under the burden-shifting framework set forth in *McDonnell Douglas*. *Albright v. City of Philadelphia*, 399 F. Supp. 2d 575, 586 (E.D. Pa. Oct. 28, 2005) ("Federal and state courts 'generally interpret the PHRA in accord with its federal counterparts'" (*quoting Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996)); *see also Gomez v. Allegheny Health Servs., Inc.*, 71 F.3d 1079, 1083-84 (3d Cir. 1995) (noting that the PHRA and Title VII are interpreted similarly).

68, 73 (3d Cir. 2003) (*quoting Burlington*, 524 U.S. at 761); *see also Cardenas v. Massey*, 269 F.3d 251, 263 (3d Cir. 2001) ("[A]n adverse employment action is one which is serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment.") (citations omitted).

In this case, it is undisputed that Plaintiff voluntarily resigned from her employment with Walmart. *See* Statement of Undisputed Material Facts, ¶ 72. It is well-established in this jurisdiction that "an employee's voluntary resignation does not constitute an adverse employment action." *LaRochelle*, 210 F. Supp. 3d at 705 (holding that the plaintiff was unable to establish a *prima facie* case of disability discrimination or retaliation when there was no genuine dispute of fact that she voluntarily resigned) (*citing Jones v. McCormick & Schmick's Seafood Rests., Inc.*, 2014 U.S. Dist. LEXIS 58460, 2014 WL 1669808, at *4 (D.N.J. April 28, 2014) (*citing Pa. State Police v. Suders*, 542 U.S. 129, 141-42 (2004)); *Gallagher v. Sunrise Assisted Living of Haverford*, 268 F. Supp. 2d 436, 442 (E.D. Pa. Feb. 13, 2003).

Further, Plaintiff cannot argue that her receipt of a Third Written Coaching constituted an adverse employment action. Plaintiff admitted that the Coaching had no impact on her salary, hours, schedule, or work duties. *See* Statement of Undisputed Material Facts, ¶ 50. Therefore, the Coaching did not affect the compensation, terms, conditions, or privileges of her employment. *Cardenas*, 269 F.3d at 263. Walmart took no action that altered the conditions of Plaintiff's employment. Therefore, Plaintiff is unable to establish that she was subjected to an adverse employment action.

## 2. Plaintiff Is Unable to Establish That She Was Constructively Discharged.

Since she cannot prove that she was subjected to an adverse employment action, Plaintiff claims that she was constructively discharged. Constructive discharge, if proven, has been

deemed an exception to the general rule that voluntary resignation is not an adverse employment action. *LaRochelle*, 210 F. Supp. 3d at 705. To prove a constructive discharge claim, Plaintiff must establish that she was discriminated against "to the point where a reasonable person in [her] position would have felt compelled to resign." *Id.* at 705, n. 36 (*citing Green v. Brennan*, 136 S. Ct. 1769, 1777 (2016)); *see also Brooks v. CBS Radio*, 2007 U.S. Dist. LEXIS 92213, *49, 2007 WL 4454312 (E.D. Pa. Dec. 17, 2007) (*aff'd Brooks v. CBS Radio*, 2009 U.S. App. LEXIS 18189 (3d Cir. 2009)). "[A] constructive discharge action is assessed by an objective standard." *Connors v. Chrysler Financial Corporation*, 160 F.3d 971, 974 (3d Cir. 1998). Plaintiff must objectively prove that "the conduct complained of would have the foreseeable result that working conditions would be so unpleasant or difficult that a reasonable person in the employee's shoes would resign." *Brooks*, 2007 U.S. Dist. LEXIS 92213 at*49 (*citing Goss v. Exxon Office Sys. Co.*, 747 F.2d 885, 887-88 (3d Cir. 1984)).

"To prove constructive discharge, a plaintiff 'must demonstrate that [her employer] subjected [her] to harassment that was **more** severe or pervasive than the minimum required to prove a hostile work environment.'" *Brooks*, *supra*, at *50 (emphasis added) (*quoting Stewart v. Weis Mkts., Inc.*, 890 F. Supp. 382, 392 (M.D. Pa. 1995)). "A hostile work environment exists when a workplace is permeated with discriminatory intimidation, ridicule, and insult so severe or pervasive as to alter the conditions of the victim's employment and create an abusive working environment." *Hay v. GMAC Mortg. Corp.*, 2003 U.S. Dist. LEXIS 16552, *23 (E.D. Pa. Sept. 11, 2003) (citation omitted). "To demonstrate a hostile work environment, a plaintiff must show (1) she suffered **intentional discrimination** because of her sex or race; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position;

and (5) respondeat superior liability exists." *Greer v. Mondelez Global, Inc.*, 590 Fed. Appx. 170, 173 (3d Cir. 2014) (*citing Andrews v. City of Phila.*, 895 F.2d 1469, 1482 (3d Cir. 1990)) (emphasis added).

A plaintiff cannot prove a constructive discharge claim when her workplace was merely stressful. *Brooks*, 2007 U.S. Dist. LEXIS 92213 at *49 (*citing Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074 (3d Cir. 1996)). The Third Circuit case law is clear that "more than complainant's subjective perceptions of unfairness, harshness, or a stress-filled work environment is required to establish a constructive discharge." *Brooks*, *supra* (*citing Aman*, 85 F.3d at 1083). The Third Circuit has explained the limitations of a constructive discharge claim as follows:

> Every job has its frustrations, challenges and disappointments; these inhere in the nature of work. An employee is protected from a calculated effort to pressure h[er] into resignation through the imposition of unreasonably harsh conditions, in excess of those faced by h[er] co-workers. [Sh]e is not, however, guaranteed a working environment free of stress. The employment discrimination laws require as an absolute precondition to suit that some adverse employment action have occurred. They cannot be transformed into a palliative for every workplace grievance, real or imagined, by the simple expedient of quitting.

*Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1083 (3d Cir. 1992) (*quoting Bristow v. Daily Press, Inc.*, 770 F.2d 1251, 1255 (4th Cir. 1985)).

In determining whether an employee was constructively discharged, the Court will consider "(1) threats of discharge; (2) being urged to resign or retire; (3) demotion or reduction in pay or benefits; (4) involuntary transfer to a less desirable position; (5) alteration of job responsibilities; and (6) being given unsatisfactory job evaluations." *Tourtellotte v. Eli Lilly & Co.*, 2013 U.S. Dist. LEXIS 54218, *16-17 (E.D. Pa. Apr. 15, 2013) (*citing Clowes v. Allegheny Valley Hosp., Inc.*, 991 F.2d 1159, 1161 (3d Cir. 1993). The Third Circuit has also noted that "in

most situations, a prerequisite to a successful constructive discharge claim is that [the] plaintiff attempted to explore alternatives before electing to resign." *Id.* (*citing Connors*, 160 F.3d at 971).

In *Clowes*, the plaintiff, a 53-year-old nurse, brought a claim for constructive discharge under the Age Discrimination in Employment Act (ADEA). The plaintiff alleged that her much younger supervisor singled her out by supervising her more closely than other nurses, frequently criticized her, attempted to find mistakes with her work, and spoke to her in a demeaning manner. *Clowes*, 991 F.2d at 1160. The plaintiff further alleged that after transferring to her young supervisor's unit, she suddenly received much lower performance evaluation ratings, was placed on a job improvement plan, and was threatened with disciplinary action if her performance failed to improve. *Id.* The plaintiff went out on a medical leave of absence and ultimately took another job. *Id.* The jury entered a verdict that Plaintiff was constructively discharged in violation of the ADEA.

The Third Circuit overturned the jury verdict on appeal. *Id.* at 1162. The Court reasoned that the jury should not have found constructive discharge since Plaintiff's claim focused merely on her employer's overzealous supervision of her job performance. *Id.* The Court cautioned that the ADEA should not be "used as a means of thwarting an employer's non-discriminatory efforts to insist on high standards." *Id.* The Court further noted that a reasonable person under the circumstances would have explored other alternatives before resigning her employment. *Id.* at 1161; *see also Difiore v. CSL Behring, U.S., LLC*, 171 F. Supp. 3d 383, 391-392 (E.D. Pa. Mar. 17, 2016) (holding that the record evidence did not rise to a level that would permit a reasonable jury to find constructive discharge when the plaintiff submitted evidence that her employer "undermined [her] authority in front of other employees, was quick to issue written warnings for

infractions, gave her uncharacteristically negative performance reviews, and warned [the] [p]laintiff that she may be terminated if she didn't meet a list of subjective requirements[,]" noting that "unfair and unwarranted treatment is by no means the same as constructive discharge" (citation omitted)).

In this case, the conduct alleged by Plaintiff does not nearly rise to the level required to establish hostile work environment, let alone constructive discharge. First, there is no evidence that Ms. Leith harassed Plaintiff, either because of her race or for any other reason. Plaintiff claims that she sometimes felt "air" behind her head, but only actually saw Ms. Leith making a "funny face" ***once***. *See* Statement of Undisputed Material Facts, ¶¶ 11-12. Even if Plaintiff were able to prove that Ms. Leith made faces, Plaintiff conceded that she never saw or heard anything that would lead her to believe that Ms. Leith's alleged conduct was race-based. *Id.* at ¶¶ 13-15. Rather, Plaintiff believed that Ms. Leith was merely "ignorant" and "privileged." *Id.* at ¶ 16. Ms. Leith made no race-based comments toward Plaintiff. *Id.* at ¶ 17. As Plaintiff testified, multiple Caucasian employees also had problems with Ms. Leith. *Id.* at ¶ 29. Since Plaintiff has not established that she experienced intentional race discrimination, her constructive discharge claim immediately fails.

Moreover, Ms. Leith's alleged conduct could not be construed as "severe and pervasive" in any manner since the alleged incidents were isolated, did not interfere with Plaintiff's working conditions, and were not physically threatening. *Id.* at ¶¶ 12, 19. In fact, Plaintiff testified that Ms. Leith always spoke to her with respect. *Id.* at ¶ 20. Thus, Plaintiff will be unable to prove hostile work environment at trial, let alone constructive discharge, which requires a showing of even more severe conduct than hostile work environment.

Plaintiff does not even allege that Ms. Leith's conduct caused her to resign; rather, she testified that she resigned because working under Manager Hetrick was intolerable. *Id.* at ¶ 73. However, there is no evidence whatsoever that Manager Hetrick ever harassed Plaintiff. In fact, Plaintiff's own testimony contradicts her claims. Plaintiff testified that while Manager Hetrick, who she likened to "Hitler," screamed at other, Caucasian employees, Manager Hetrick treated Plaintiff with respect. *Id.* at ¶¶ 64-65. She never felt that she Manager Hetrick treated her differently based on her race. *Id.* at ¶ 66.

Plaintiff's primary issue with Manager Hetrick appears to stem from one isolated incident on August 6, 2016 when she received a Third Written Coaching for Integrity. *Id.* at ¶ 39. On that occasion, Manager Hetrick Coached Plaintiff when she discovered that Plaintiff had lied about a mix-up with drug testing paperwork. *Id.* at ¶¶ 40-43. In a situation where Manager Hetrick would have been justifying in terminating Plaintiff for her dishonest conduct, Manager Hetrick instead imposed a lesser penalty in the form of an escalated Coaching. *Id.* at ¶ 40. The Coaching had no impact on the conditions of Plaintiff's employment and could not be considered "harassment" in any manner. *Id.* at ¶ 50. Plaintiff went out on a medical leave of absence merely four days after she received the Third Written Coaching, and therefore had no interaction with Manager Hetrick prior to her resignation over three months later, aside from one email where she requested reassignment. *Id.* at ¶¶ 53, 67, 76.

Plaintiff admitted that she had no plans to resign before she went out on a leave of absence. *Id.* at ¶ 75. Further, Plaintiff had no interactions with Manager Hetrick between when she went out on leave and ultimately resigned that would lead a jury to believe that Manager Hetrick's ongoing "harassment" was a factor in Plaintiff's resignation. *Id.* at ¶ 76. Rather, based

on her testimony, Plaintiff resigned to avoid termination, which in her mind would have prevented her from returning to work at Walmart in the future. *Id.* at ¶ 77.

As in *Clowes*, no reasonable person in Plaintiff's situation would have resigned due to any alleged harassment. Plaintiff was merely held accountable for an integrity issue. While the situation may have been awkward for Plaintiff, Manager Hetrick never expressed that she wanted Plaintiff to leave, or that termination was imminent. There is no evidence of record that Manager Hetrick harassed Plaintiff, changed the conditions of her employment, or threatened to terminate her employment at any time. In fact, when Plaintiff requested a job reassignment, Manager Hetrick encouraged her to apply for any open position within the Company. *Id.* at ¶ 54. Plaintiff made no attempt to transfer to another position. She herself testified that there were "always" jobs available, yet, despite Manager Hetrick's invitation, she did not apply for any positions, nor did she conduct a search to determine what jobs, if any, were available. *Id.* at ¶¶ 55-57.

There is no dispute amongst the parties that Plaintiff voluntarily resigned. Although Plaintiff claims constructive discharge, there is simply no evidence that either Ms. Leith or Manager Hetrick harassed Plaintiff, or caused conditions so intolerable that a reasonable person in Plaintiff's situation would have resigned. At best, Plaintiff has established that she did not always get along with her co-workers and was held accountable at work. This is insufficient to prove discrimination or retaliation. Since a reasonable person under the circumstances would not have resigned, Plaintiff's constructive discharge claim lacks merit and cannot satisfy the *prima facie* case prong that Plaintiff experienced an adverse employment action. Thus, Plaintiff is unable to establish a *prima facie* case of race discrimination or retaliation and Walmart is entitled to judgment in its favor as a matter of law.

### C.    **Plaintiff Also Cannot Establish a Prima Facie Case of Retaliation Because She Never Engaged in a Protected Activity.**

In addition to her inability to establish an adverse employment action, Plaintiff is also unable to prove that she engaged in a protected activity.    "[O]nly grievances actionable under Title VII are considered a protected activity."  *Hay*, 2003 U.S. Dist. LEXIS 16552 at *22 (*citing Walden v. Georgia Pacific Corporation*, 126 F.3d 506, 513, n.4 (3d Cir. 1997)).  In *Hay*, an African-American plaintiff alleged that she was retaliated against after reporting race discrimination.  *Id.*  She claimed that her employer retaliated against her when it failed to create a new position that would oversee her own, treated a non-African American employee differently, and gave her performance evaluation ratings that were "less than desirable."  *Id.* at *15-16.  The record showed that Plaintiff made several complaints of alleged unfair treatment in the workplace; however, she never mentioned race until *after* the employer's alleged retaliatory actions occurred.  *Id.* at *22.  The Court held that the plaintiff's prior complaints of unfair treatment did not qualify as protected activities because she never mentioned race or discrimination.  *Id.*

Similarly in this case, there is no genuine dispute that Plaintiff ***never complained*** of race discrimination.  *See* Statement of Undisputed Material Facts, ¶¶ 23, 25-26.  Plaintiff merely complained regarding Ms. Leith's alleged rude treatment.  *Id.* at ¶¶ 9-11, 21.  Title VII does not protect employees from rudeness or personality conflicts with their co-workers.  As such, Plaintiff's complaints regarding Ms. Leith's alleged teasing during meetings (which, Walmart reiterates Plaintiff only observed <u>once</u>) does not qualify as a protected activity.  Plaintiff never notified Walmart that she felt as though she was being treated differently based upon her race. *Id.* at ¶¶ 23, 25-26.   She never made any mention of alleged race discrimination until she filed an EEOC Charge in November 2016, well after she received her Third Written Coaching.  *Id.* at

¶ 69.  At that time, Plaintiff was out on a medical leave of absence and had no further interaction with Manager Hetrick, aside from one email where she requested a reassignment in October 2016.  *Id.* at ¶¶ 53, 67, 76.

Since Plaintiff cannot prove that she engaged in a protected activity, a crucial element of her *prima facie* case, she cannot possibly prevail on her retaliation claim at trial.  Accordingly, Walmart is entitled to judgment in its favor as a matter of law.

> **D.** **Plaintiff Further Cannot Establish a Prima Facie Case of Retaliation Since She Is Unable to Create a Causal Link Between a Protected Activity and An Adverse Employment Action.**

To establish the last prong of the *prima facie* retaliation case, Plaintiff must assert a causal link between a protected activity and an adverse employment action.  To do so, she must present evidence of "either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing . . . ."  *LeBlanc v. Hill Sch.*, 2015 U.S. Dist. LEXIS 2981, *44, 2015 WL 144135 (E.D. Pa. Jan. 12, 2015) (citations omitted).  "In order for timeframe alone to provide for an inference of a causal link it must be "'unusually suggestive of retaliatory motive'"  *Jimmy v. Elwyn, Inc.*, 2014 U.S. Dist. LEXIS 19603, *35-36 (E.D. Pa. Feb. 18, 2014) (*quoting Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 503 (3d Cir. 1997) (granting summary judgment and finding the nineteen month timeframe between the protected activity and adverse employment action too great to infer causality based on timing alone)).

When the temporal proximity between the protected activity and adverse employment action is not "unusually suggestive," the Court will evaluate whether "the proffered evidence, looked at as a whole, may suffice to raise the inference."  *Sawa v. RDG-GCS Joint Ventures III*, 2017 U.S. Dist. LEXIS 109357, *36-37 (E.D. Pa. July 14, 2017) (*quoting Farrell v. Planters*

*Lifesavers Co.*, 206 F.3d 271, 279 (3d Cir. 2000)).  "Among the kinds of evidence that a plaintiff can proffer are intervening antagonism or retaliatory animus, inconsistencies in the employer's articulated reasons for terminating the employee, or any other evidence in the record sufficient to support the inference of retaliatory animus."  *Sawa*, *supra* (*citing Farrell*, *supra*, at 279-81); *see also Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.").

It is impossible to assess temporal proximity in this matter since Plaintiff never engaged in a protected activity.  However, for purposes of this Motion, Plaintiff first complained of Ms. Leith's conduct on April 23, 2016.  *See* Statement of Undisputed Material Facts, ¶ 21.  She did not receive her Third Written Coaching until August 6, 2016.[6]  *Id.* at ¶ 39.  Plaintiff did not request reassignment until October 24, 2016.  *Id.* at ¶ 53.  Therefore, at least three and a half months lapsed between Plaintiff's initial complaint and the alleged retaliatory conduct.  The Courts in the Third Circuit have consistently held that while "[a] gap of two days has been held to be unusually suggestive; a gap of three months is not."  *Sampath v. Concurrent Techs. Corp.*, 2008 U.S. Dist. LEXIS 25715, *104 (W.D. Pa. Mar. 31, 2008) (*citing LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n,* 503 F.3d 217, 232-33 (3d Cir. 2007)) ("Although there is no bright line rule as to what constitutes unduly suggestive temporal proximity, a gap of three months between the protected activity and the adverse action, without more, cannot create an inference of causation and defeat summary judgment."); *see also Gillyard v. Geithner*, 81 F. Supp. 3d 437, 444 (E.D. Pa. Jan. 28, 2015) (holding that when the plaintiff's non-selection for a position

---

[6] Plaintiff also received a First Written Coaching in July 2016, but Plaintiff does not assert that this Coaching was retaliatory and did not dispute the legitimacy of the Coaching. *See* Statement of Undisputed Material Facts, ¶¶ 33-37.  In any event, the two and a half month gap between her initial complaints and First Written Coaching would also be insufficient to establish an inference of retaliation based on temporal proximity.

occurred two months after the protected activity, the temporal proximity was not close enough to support an inference of retaliation).

Since Plaintiff cannot create an inference of retaliation based on temporal proximity, she must offer other evidence indicative of a causal connection. "While a pattern of antagonism sufficient to show retaliatory motive need not rise to the level of a hostile work environment claim, the employer's alleged antagonism must be consistent and continuous." *Grdinich v. Phila. Hous. Auth.*, 2017 U.S. Dist. LEXIS 74892, *17, 2017 WL 2152175 (E.D. Pa. May 17, 2017) (internal citations omitted). "'A pattern of antagonism . . . is more than a series of disciplinary actions; a plaintiff must offer [a] basis for linking the disciplinary actions to her [protected activity].'" *Grdinich*, *supra* (*citing Wells v. Retinovitreous Assocs.*, No. 15-5675, 2016 U.S. Dist. LEXIS 80313, 2016 WL 3405457, at *3 (E.D. Pa. June 21, 2016) (*quoting Bartos v. MHM Corr. Servs., Inc*., 454 F. App'x 74, 79 (3d Cir. 2011) (alterations in original)).

In *Grdinich*, the plaintiff attempted to establish a pattern of antagonism after she complained of sexual harassment. She claimed that after she complained, her employer took her work vehicle away from her for no reason, generally made derogatory and discriminatory comments, gave her a workspace that unnecessarily isolated her from other employees, and told other employees to not eat lunch with her. 2017 U.S. Dist. LEXIS 74892 at *18-19. The Court found that when the evidence was viewed as a whole, it was insufficient to show a pattern of antagonism. *Id.* at 19.

In this case, Plaintiff generally claims that Manager Hetrick "became unkind" to her following her April 23, 2016 complaint. *See* Statement of Undisputed Material Facts, ¶ 59. However, she adduced no evidence of ongoing antagonistic treatment. Plaintiff merely claims

that after she made a complaint, Manager Hetrick laughed with Ms. Leith during meetings *twice*. *Id.* at ¶ 61. Plaintiff adduced no evidence that the women were laughing at her other than her mere suspicion. Moreover, she testified that Manager Hetrick always treated her with respect. *Id.* at ¶ 65.

Plaintiff's Coachings are also insufficient to establish a pattern of antagonism. Plaintiff did not dispute her First Written Coaching in any manner, and admitted that it was completely legitimate. *Id.* at ¶¶ 36-37. Plaintiff's Third Written Coaching, while disputed by Plaintiff, was also legitimate and clearly documented. *Id.* at ¶¶ 40-43. To reiterate, Plaintiff was Coached after she lied about providing incorrect drug testing paperwork to a manager as proven by surveillance video. *Id.* at ¶¶ 42-43. Plaintiff testified that she believed the Third Written Coaching was fabricated, but presented no evidence to support this belief. *Id.* at ¶ 44. During her deposition, she claimed that another employee named "Jim" had actually obtained the paperwork, but she failed to report this information to Manager Hetrick when she conducted the investigation in 2016. *Id.* at ¶¶ 48-49. Further, Plaintiff testified that Manager Baggett, who reviewed the surveillance video, was an honest man whose integrity she would never doubt. *Id.* at ¶ 45.

Taking into consideration all the evidence of record, as in *Grdinich*, the facts are simply insufficient to establish any causal link between Plaintiff's complaints regarding Ms. Leith and an adverse employment action. As such, Plaintiff cannot establish her *prima facie* case of retaliation and Walmart is entitled to judgment in its favor as a matter of law.

**E.** **Even If Plaintiff Is Able to Establish Prima Facie Cases of Race Discrimination and Retaliation, Her Claims Fail Because There Is No Basis Upon Which Plaintiff Will Be Able to Establish Pretext.**

Assuming *arguendo* that Plaintiff can meet her burden of presenting a *prima facie* case of race discrimination or retaliation, Walmart has legitimate, non-discriminatory and non-retaliatory reasons for all employment decisions. Walmart's legitimate, non-discriminatory and non-retaliatory reason for Plaintiff's Third Written Coaching was her poor performance and dishonest behavior. Poor performance has been recognized as a legitimate, non-discriminatory and non-retaliatory reason for an adverse employment action. *See, e.g., Frantz v. Ferguson Enters.*, 2009 U.S. Dist. LEXIS 6241, *12, 19 (E.D. Pa. Jan. 26, 2009) (finding that an employer had presented a legitimate non-discriminatory when it asserted that the plaintiff-employee's termination was based upon his poor sales performance). An employer's belief that the plaintiff was acting dishonestly has also been recognized as a legitimate, non-discriminatory and non-retaliatory reason for an employment action. *See Capps v. Mondelez Global, LLC*, 847 F.3d 144, 147 (3d Cir. 2017) (holding that the employer's honest belief that its employee was misusing FMLA leave was sufficient to defeat his FMLA retaliation claim); *see also Fullman v. Potter*, 480 F. Supp. 2d 782, 792 (E.D. Pa. Mar. 28, 2007) (holding that the employer stated a legitimate non-discriminatory reason when it terminated an employee for lying on his employment application) (*aff'd Fullman v. Potter*, 254 Fed. Appx. 919 (3d Cir. 2007))

To the extent Plaintiff claims that Manager Hetrick's alleged denial of her request for "reassignment" to a floor manager position constituted an adverse employment action, Walmart had a legitimate, non-discriminatory and non-retaliatory reason for this conduct as well. As Manager Hetrick advised Plaintiff, Walmart had no system for spontaneous "reassignment." *See* Statement of Undisputed Material Facts, ¶ 54. Manager Hetrick invited Plaintiff to apply for any

open position within the Company in accordance with Walmart's procedures.  *Id*.  There is no dispute that Plaintiff applied for no floor manager positions thereafter.  *Id.* at ¶ 55.  Walmart has met its light burden of producing legitimate, non-discriminatory and non-retaliatory reasons for the adverse employment actions alleged by Plaintiff; as such, the burden of persuasion is on Plaintiff to prove that these proffered reasons were pretext for discrimination and retaliation.

In this case, Plaintiff adduced no evidence whatsoever that she was treated differently or retaliated against based on her race.  "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious)' do not alone amount to discrimination."  *Kier v. F. Lackland & Sons, LLC*, 72 F. Supp. 3d 597, 609 (E.D. Pa. Dec. 17, 2014) (*quoting Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 271 (2001)).  In *Kier*, the plaintiff alleged that his supervisor discriminated against him based on his race.  In support of his claim, the plaintiff alleged that his supervisor stated on two occasions that if he had known the plaintiff was coming, he would have locked the door, then laughed.  *Kier*, 72 F. Supp. 3d at 604-605.  He further stated that his supervisor made him feel "uncomfortable."  *Id.* at 605.  The plaintiff also asserted that his supervisor made him log his tasks, but other employees were not required to keep a log.  *Id.* Lastly, he alleged that his supervisor lacked enthusiasm to train him.  *Id.*

The Court found that Plaintiff offered no evidence of pretext since none of the supervisor's alleged comments or actions suggested a racial animus.  *Id.* at 609.  The Court granted the defendant's motion for summary judgment in its entirety.  *Id.* at 620; *see also Jackson v. Phila. Hous. Auth.*, 2015 U.S. Dist. LEXIS 69320, *25-26, 2015 WL 3444244 (E.D. Pa. May 28, 2015) (granting summary judgment when the plaintiff testified that there was a "possibility" of race discrimination but offered no evidence, beyond mere speculation, that he was terminated based on the defendant's racial animus).

Similarly here, Plaintiff never heard Ms. Leith say anything derogatory or discriminatory about African-Americans. *See* Statement of Undisputed Material Facts, ¶ 17. Plaintiff heard no racial slurs of any kind while working at the Bethlehem Fulfillment Center. *Id.* at ¶ 18. Plaintiff conceded that she never saw or heard anything that would lead her to believe that either Ms. Leith's or Manager Hetrick's actions were race-based. *Id.* at ¶¶ 13-15, 66. Plaintiff identified no facts whatsoever that would lead a reasonable factfinder to conclude that she was treated differently based on her race.

Plaintiff also adduced no evidence that she was treated less favorably than similarly-situated Caucasian employees. Plaintiff conceded that Ms. Leith and Manager Hetrick also disrespected Caucasian employees, stating that Ms. Leith was "horrible" to her Caucasian co-workers, and that Manager Hetrick acted like "Hitler." *Id.* at ¶¶ 29, 63. In fact, Plaintiff testified that Ms. Leith and Manager Hetrick treated her *more* respectfully than her Caucasian co-workers. *Id.* at ¶¶ 20, 65. There is no evidence of record to support Plaintiff's contention that her co-worker, Ms. Clauser, was treated more favorably. Plaintiff was provided an opportunity to apply for any available job within the Company, and she failed to do so. *Id.* at ¶¶ 54-58.

Hence, Plaintiff's allegation that she was treated differently based on race is mere speculation and not based on any facts of record. Plaintiff's subjective belief that Walmart discriminated based on race, "without any objective foundation on which to rest that belief, is insufficient to establish racial animus." *Kier*, 72 F. Supp. 3d at 609; *see also Tillman v. Redevelopment Auth.*, 2013 U.S. Dist. LEXIS 147234, 2013 WL 5594701, at *8 (E.D. Pa. Oct. 11, 2013) ("A plaintiff's own unsubstantiated, subjective beliefs of suspicions alone would not suffice to persuade a rational trier of fact that age [or race] was a factor in the [adverse

employment action]").  No reasonable jury could conclude under the circumstances that Plaintiff was discriminated or retaliated against based on her race.

Further, no reasonable jury would find that Manager Hetrick's issuance of a Third Written Coaching was so unworthy of credence that unlawful discrimination or retaliation was more likely than not the reason for Walmart's conduct.  The reasons for the Coaching were well documented; namely, that Plaintiff lied when confronted about a mix-up with drug testing paperwork.  *See* Statement of Undisputed Material Facts, ¶¶ 42-43.  Plaintiff failed to identify any legitimate evidence to support her theory that the Third Written Coaching was malicious or fabricated.  She specifically acknowledged that the individual responsible for the investigation into her conduct, Manager Steven Baggett, was a "very honest man" and she would "absolutely not" have any reason to doubt his integrity.  *Id.* at ¶ 45.

Since Plaintiff is unable to establish sufficient evidence of pretext, there is no genuine dispute of fact for trial, and Walmart is entitled to judgment in its favor as a matter of law.

## V. CONCLUSION

Plaintiff is unable to prove her claims of race discrimination and retaliation and there is no genuine dispute of fact for trial. Therefore, Walmart respectfully requests that this Honorable Court enter judgment in Walmart's favor as a matter of law and dismiss Plaintiff's Complaint with prejudice.

Respectfully submitted,
**McDONNELL & ASSOCIATES, P.C.**

By:      */s/ Gwyneth R. Williams*
            Patrick J. McDonnell, Esquire
            Attorney I.D. No.: 62310
            Email: pmcdonnell@mcda-law.com
            Gwyneth R. Williams, Esquire
            Attorney I.D. No.: 319219
            Email: gwilliams@mcda-law.com
            500 Route 70 West
            Cherry Hill, NJ 08002
            (T) 856.429.5300 (F) 856.429.5314
            *Attorneys for Defendant*

Dated: July 6, 2018