# DEFENDANT'S REPLY BRIEF IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LAURETTA R. KING<br>      Plaintiff, | Case No. 17-cv-05026 |
| v. | CIVIL ACTION |
| WAL-MART.COM USA, LLC<br>      Defendant. | JURY TRIAL DEMANDED |

**DEFENDANT'S REPLY BRIEF IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Defendant Wal-Mart.Com USA, LLC (hereinafter referred to as "Walmart"), by and through its undersigned counsel, Law Offices of McDonnell & Associates, P.C., submits the following Reply Brief in further support of its Motion for Summary Judgment.

**I.    RESPONSE TO PLAINTIFF'S COUNTER-STATEMENT OF FACTS**

1.    Admitted in part; denied in part. It is admitted that Plaintiff transferred from a Walmart store in Anchorage, Alaska to the Fulfillment Center in Bethlehem, Pennsylvania in February 2016. The remaining averments are denied. By way of further response, Plaintiff's job title at all material times was "Human Resources Office Manager."

2.    Admitted in part; denied in part. It is admitted only that Heather Hetrick, Stephanie Leith, Michael Gormont, and Steve Baggett were Caucasian. The remaining averments are denied. By way of further response, there were other African-American employees working at the Fulfillment Center, including a member of management named Nicole Salle. *See* Ex. B to Walmart's Motion, 69:2-16. Plaintiff testified that there were multiple races represented at the Fulfillment Center, including African-American, Indian, and Spanish employees. *Id.* at 69:10-70:2. Moreover, Manager Hetrick testified that she currently has two

1

African-American managers on her Human Resources team. *See* Ex. D to Walmart's Motion, 12:19-13:2.

3. Denied. Manager Hetrick testified that while "it takes about a year to have experienced all of the different pieces within HR, [she expected] all of [her associates] to learn and develop every day." *See* Ex. D to Walmart's Motion, 15:8-16. Manager Hetrick never said that Plaintiff would be given a free pass and never be held accountable for poor performance and integrity issues.[1]

4. Denied. Plaintiff adduced no facts in discovery to support her claims that Ms. Leith made "overt and unwelcome gestures," and admitted that she only saw Ms. Leith make a "funny face" *once*. *See* Ex. B to Walmart's Motion, 34:8-21. Plaintiff also adduced no facts to support her allegation that Manager Hetrick personally observed the funny face. On the contrary, Manager Hetrick was unable to substantiate Plaintiff's complaints in this regard. *See* Ex. D to Walmart's Motion, 17:13-22.

5. Denied. Plaintiff admitted that she only saw Ms. Leith make a "funny face" *once*. *See* Ex. B to Walmart's Motion, 34:8-21. Manager Hetrick was unable to substantiate any of Plaintiff's complaints. *See* Ex. D to Walmart's Motion, 17:13-22. By way of further response, Plaintiff provided no testimony or documents regarding any alleged "antagonizing" behavior by Jack Schippers.

6. Denied. Plaintiff admitted that she only saw Ms. Leith make a "funny face" *once*. *See* Ex. B to Walmart's Motion, 34:8-21.

---

[1] Walmart notes that Plaintiff relies merely on the allegations in her Complaint and fails to cite to the facts of record adduced during discovery.

7. Denied. Plaintiff admitted that she only saw Ms. Leith make a "funny face" *once*. *See* Ex. B to Walmart's Motion, 34:8-21. Further, Plaintiff testified that there were other African-American employees working at the Fulfillment Center. *Id.* at 69:2-16.

8. Admitted in part; denied in part. It is admitted only that Plaintiff sent a letter to Manager Hetrick on April 23, 2016 where she complained of Ms. Leith's alleged "unprofessional" behavior. The remaining averments are denied.

9. Admitted.

10. Denied. By way of further response, Manager Hetrick was unable to substantiate any of Plaintiff's complaints. *See* Ex. D to Walmart's Motion, 17:13-22.[2]

11. Denied. Plaintiff adduced no facts to support her allegation that Manager Hetrick failed to investigate her complaints. On the contrary, Manager Hetrick testified that she did investigate the complaints and was unable to substantiate any of them. *See* Ex. D to Walmart's Motion, 17:13-22, 18:16-20; *see also* documents attached hereto as Exhibit "I" to Walmart's Motion, bearing Bates "WMDocs_King 61-63."

12. Denied. None of the alleged actions cited by Plaintiff constituted an adverse employment action within the meaning of Title VII as they did not alter the compensation, terms, conditions, or privileges of her employment. Further, Plaintiff voluntary resigned her employment with Walmart.

13. Denied. First, Plaintiff had previously been Coached three times when she worked at the Walmart Store in Anchorage, Alaska. *See* excerpts of Walmart's Answers to Plaintiff's Interrogatories, attached hereto as Exhibit "J" to Walmart's Motion, answer to Interrogatory No. 8. Further, neither of Plaintiff's Coachings at the Bethlehem Fulfillment

---

[2] Walmart notes that Plaintiff's statements contained within her EEOC Rebuttal Statement constitute inadmissible hearsay as they were unverified and not made under oath.

3

Center constituted an adverse employment action within the meaning of Title VII as they did not alter the compensation, terms, conditions, or privileges of her employment. Moreover, Plaintiff did not dispute her First Coaching. *See* Ex. B to Walmart's Motion, 105:9-10, 13,107:13-19. Rather, she conceded that the First Written Coaching was legitimate. *Id.* at 107:13-16. By way of further response, Plaintiff adduced no evidence that any of Walmart's actions were pretext for race discrimination as she identified no facts that would support a finding of racial bias.

14. Denied. By way of further response, Plaintiff has identified no adverse employment action, nor has she cited any facts of record that would support a finding that non-African-American associates were treated more favorably.[3]

15. Denied. Plaintiff adduced no evidence that Manager Hetrick discriminated against Mr. Perez. She merely cites alleged hearsay statements made by Mr. Perez, none of which have been established as facts of record. Further, Plaintiff admitted that *she* in fact may have been given the position that Mr. Perez was allegedly passed over for. *See* Ex. B to Walmart's Motion, 65:5-24. Moreover, Plaintiff testified that there were over 50 Hispanic employees working at the Fulfillment Center. *Id.* at 47:13-48:1. The "head" of Human Resources at Walmart was a Hispanic man named David Alvarado (misidentified by Plaintiff as David Alvarez). *Id.* at 48:17-19, 49:11-15.

16. Denied. Again, Plaintiff cites hearsay statements that are unsupported by the facts of record. Plaintiff adduced no evidence that Ms. Salle was treated differently than similarly-situated Caucasian associates.

17. Denied. Plaintiff's testimony merely established that Manager Hetrick treated Plaintiff the same, if not better, than the Caucasian Human Resources managers. *See* Walmart's

---

[3] Walmart notes that Plaintiff's citation to the record in this paragraph appears inaccurate.

Statement of Facts, ¶¶ 63-65. Plaintiff adduced no evidence that either Andy or Chelsea had performance or integrity issues that would merit a Third Written Coaching.[4]

18. Denied. Manager Hetrick Coached Plaintiff for lying about an incident where she provided incorrect drug testing paperwork to a manager. *See* Ex. F to Walmart's Motion, and Ex. B to Walmart's Motion, 72:3-4. Manager Hetrick testified that the Asset Protection Department would not allow Plaintiff to see the video since it was against company policy. *See* Ex. D to Walmart's Motion, 49:2-21. Plaintiff testified that the Asset Protection Manager who performed the investigation, Steve Baggett, was a "very honest man" and she would "absolutely not" have any reason to doubt his integrity. *See* Ex. B to Walmart's Motion, 77:20-25.

19. Denied. Plaintiff testified that she never saw the video; therefore, she cannot form an opinion as to what the video showed.

20. Denied. Plaintiff has offered no legitimate explanation for the incident giving rise to her Third Written Coaching to date. At her deposition, when asked who obtained the paperwork, she testified "I swear, I don't know . . . ." *See* Ex. B to Walmart's Motion, 98:17-99:2. 98:6-11. Then she alleged that a manager named "Jim" obtained the paperwork; however, she never reported this information to Manager Hetrick. *Id.* at 98:17-99:2. More importantly, the Third Written Coaching had no effect on Plaintiff's salary, hours, schedule, or work duties. *See* Ex. B, 87:13-88:2. Therefore, the Third Written Coaching did not constitute an adverse employment action.

21. Denied. The reason for the Third Written Coaching is well documented. *See* Ex. F to Walmart's Motion.

---

[4] Plaintiff also cited irrelevant evidence related to these associates' ages – Plaintiff did not assert an age discrimination claim in her Complaint.

22. Denied. Plaintiff testified that she resigned because she did not want to work with Manager Hetrick, had difficulty driving at times due to a back injury, and feared being terminated. *See* Ex. B to Walmart's Motion, 112:16-113:1, 127:25-128:10.

23. Denied. Plaintiff's testimony speaks for itself. By way of further response, Plaintiff's subjective belief that she had no choice but to resign is insufficient to prove constructive discharge. Plaintiff has offered no evidence that a reasonable person under the same circumstances would have resigned.

24. Denied. Plaintiff adduced no evidence that she reported race discrimination to Misty Melton. In fact, she specifically admitted that she *never* told Ms. Melton that she thought she was being treated differently based on her race. *Id.* at 59:3-8. Further, Mr. Perez's alleged statement that Plaintiff would not have been hired had Walmart known she was black constitutes inadmissible hearsay and therefore cannot be considered upon a motion for summary judgment.

25. Denied. Plaintiff did not receive her First Written Coaching (which she admitted was legitimate) until July 7, 2016, two and a half months after she complained about Ms. Leith's conduct. This timing is not unusually suggestive. Furthermore, neither of Plaintiff's Coachings constituted an adverse employment action since they had no effect on the terms or conditions of her employment. *See* Ex. B, 87:13-88:2, 107:24-108:1.

26. Denied. Manager Hetrick spoke to Plaintiff regarding her complaints on or about May 4, 2016, over two months before Plaintiff's First Written Coaching. *See* Exhibit "I" to Walmart's Motion. Walmart further denies that Plaintiff told Ms. Melton that she was being discriminated against based on race, since Plaintiff admitted that she did not. *See* Ex. B to Walmart's Motion, 59:3-8.

27.     Denied. Plaintiff never told Ms. Melton that she felt she was being treated differently based on her race. *Id.*

28.     Denied. Plaintiff cannot establish retaliation because she never engaged in a protected activity, nor was she subjected to an adverse employment action. Further, even if deemed "adverse," Plaintiff was not Coached until two and a half months after her initial complaints. This timing is not unusually suggestive.

29.     Denied. Plaintiff admitted that her allegations of race discrimination were based merely on her assumption, and not anything she saw or heard. *See* Ex. B to Walmart's Motion, 32:22-33:2. She further admitted that Manager Hetrick treated Caucasian employees the same or worse than her, and she had no reason to believe that she was treated differently based on her race. *Id.* at 115:3-116:10.

## II. ARGUMENT

### A. Plaintiff's Opposition Fails to Identify An Adverse Employment Action Within the Meaning of Title VII and Walmart Is Therefore Entitled to Judgment in its Favor As a Matter of Law.

Plaintiff claims that her First and Third Written Coachings constituted adverse employment actions. She cites *Warenecki v. City of Philadelphia*, 2010 U.S. Dist. LEXIS 116912, 2010 WL 4344558 (E.D. Pa. Nov. 3, 2010) in support of this assertion. However, that case held that the plaintiff's written reprimand, referred to as a "Performance Counseling," specifically did **not** qualify as an adverse employment action. *Id.* at *16. The Court explained that an adverse employment action must have a **tangible effect** on the recipient's employment. *Id.* (emphasis added) (*citing* 42 U.S.C. § 2000e-2(a)) ("An adverse employment action is that which affects the employee's 'compensation, terms, conditions, or privileges of employment.'"). The plaintiff in *Warenecki* produced no evidence that the reprimand affected the compensation,

7

terms, conditions, or privileges of her employment in any way, such as a loss in benefits or ineligibility for promotional opportunities. *Id.* at *16-17 (*citing Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1241 (11th Cir. 2001)).

Similarly in this case, Plaintiff admitted that neither her First nor Third Written Coaching affected the terms or conditions of her employment. *See* Walmart's Statement of Facts, ¶¶ 38, 50. She admitted outright that the First Coaching was legitimate. *Id.* at ¶ 37. Although she contested the Third Written Coaching, she admitted that the Coaching had no impact whatsoever on her compensation, hours, schedule, or work duties. *Id.* at ¶ 50. Therefore, there is no dispute of fact that the Coachings did not constitute adverse employment actions within the meaning of Title VII.

### B. Plaintiff's Opposition Cites No Evidence of Pretext and Walmart Is Therefore Entitled to Judgment in its Favor As a Matter of Law.

In Plaintiff's opposition, she attempts to create an issue of fact by citing various hearsay statements, none of which are facts of record, and none of which will be admissible at trial. Specifically, she alleges that a Hispanic manager named Rafael Perez told her that she would not have been hired had management known she was black, that Manager Hetrick "blackballed" him, and that Manager Hetrick had "a problem" with Spanish people in the building. Plaintiff also cites alleged statements by an African-American manager named Nicole Salle that she received a Step Three "write-up," with no context as to the reason for the alleged write-up.

Pursuant to the Federal Rules of Evidence, hearsay "is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R.E. 801(c). The Court may not consider hearsay evidence when deciding a motion for summary judgment. *Sec. & Data Techs., Inc. v. Sch. Dist. of Phila.*, 145 F. Supp. 3d 454, 462 (E.D. Pa. Nov. 4, 2015) (*citing Smith v. City of Allentown*, 589 F.3d 684, 693

8

(3d Cir. 2009)) ("Hearsay statements that would be inadmissible at trial may not be considered for purposes of summary judgment."); *see also Bowdoin v. Oriel*, 2000 U.S. Dist. LEXIS 888, *7-8 (E.D. Pa. Jan. 28, 2000) (*citing* Fed. R. Civ. P. 56(e); 11 James Wm. Moore, *Moore's Federal Practice* § 56.14[1][d] (3d ed. 1999)) ("For purposes of deciding a motion for summary judgment under Rule 56(e) of the Federal Rules of Civil Procedure, we are to disregard statements . . . that contain inadmissible hearsay"); *see also Embrico v. U.S. Steel Corp.*, 404 F. Supp. 2d 802 (E.D. Pa. Nov. 30, 2005) (Brody, J.) (*aff'd Embrico v. U.S. Steel Corp.*, 245 Fed. Appx. 184 (3d Cir. 2007)).

In *Embrico*, the plaintiffs alleged that they were constructively discharged after participating in U.S. Steel's Voluntary Early Retirement Program ("VERP") in violation of the Age Discrimination in Employment Act ("ADEA"). 404 F. Supp. 2d at 806. The manufacturing plant where the plaintiffs worked was in the process of being shut down. *Id.* at 808. The plaintiffs alleged that they retired early out of fear that they would be terminated after the plant's closure due to their older age. *Id.* at 818. In support of this assertion, the plaintiffs cited the testimony of a former employee who stated that another employee told him that other, younger employees were provided assurances that they would be retained after the plant's closure. *Id.* at 816. Upon U.S. Steel's motion for summary judgment, the Court found that this testimony constituted hearsay within hearsay. *Id.* at 809, n. 7. Since the alleged conversations appeared to be personal in nature, and not made in any representative capacity on behalf of U.S. Steel, the Court found that the alleged statements did not fall within the statement against interest or agency exceptions to the hearsay rule and would be inadmissible at trial. *Id.* Therefore, the Court concluded that the testimony regarding the alleged assurances to younger employees could

9

not be used to support the plaintiffs' claims of constructive discharge. *Id.* The Court granted U.S. Steel's motion for summary judgment in its entirety. *Id.* at 839.

Similarly here, Plaintiff's testimony that Mr. Perez and Ms. Salle complained to her of alleged discrimination constitutes inadmissible hearsay. Plaintiff did not depose Mr. Perez or Ms. Salle, nor did she obtain any testimony from Manager Hetrick regarding these associates. Plaintiff adduced no evidence whatsoever regarding her unsupported belief that Mr. Perez was denied a promotion, let alone that he was denied a promotion based on his race. In fact, Plaintiff admitted that *she* in fact may have been given the position that Mr. Perez was allegedly passed over for. *See* Ex. B to Walmart's Motion, 65:5-24. Plaintiff also adduced no evidence that Ms. Salle was ever Coached, why she may have been Coached, or how she was allegedly treated differently than Caucasian employees under similar circumstances. Plaintiff's testimony in this regard is based on hearsay statements and mere conjecture. The alleged statements do not fall within any exception to the hearsay rule since they were not made on behalf of Walmart and appeared to be personal in nature. Therefore, Plaintiff's testimony regarding Mr. Perez's and Ms. Salle's alleged statements will be inadmissible at trial and cannot be used to overcome summary judgment.

Furthermore, Plaintiff's opposition cites ***no facts whatsoever*** in support of her claim that she was treated differently based on her race. The undisputed evidence of record establishes that Plaintiff never saw or heard anything that would lead her to believe that either Ms. Leith's or Manager Hetrick's actions were race-based. *See* Walmart's Statement of Facts, ¶¶ 13-15, 66. Plaintiff conceded that Ms. Leith and Manager Hetrick treated Caucasian employees either similarly or worse than her. *Id.* at ¶¶ 20, 29, 63, 65. Plaintiff generally claims that Caucasian employees "Andy" and "Chelsea" were treated differently because they never received Step

10

Three "write-ups." However, Plaintiff adduced no discovery that Andy or Chelsea ever had an integrity issue or engaged in misconduct worthy of a Third Written Coaching. The lack of comparator data supporting Plaintiff's theory is fatal to her case. Therefore, Plaintiff will not be able to establish pretext at trial and Walmart is entitled to judgment in its favor as a matter of law.

      **C.**     **Plaintiff's Opposition Fails to Argue Why a Reasonable Person in Her Position Would Have Resigned and Plaintiff Therefore Cannot Prove Constructive Discharge.**

Plaintiff argues that she had "no choice" but to resign. However, Plaintiff's subjective belief that she could no longer work for Manager Hetrick is insufficient to prove constructive discharge. The standard is whether a *reasonable* person under the circumstances would resign. *LaRochelle v. Wilmac Corp.*, 210 F. Supp. 3d 658, 705 (E.D. Pa. Sept. 27, 2016). Plaintiff must show that Manager Hetrick's alleged discrimination went "beyond a 'threshold of intolerable conditions.'" *Embrico v. U.S. Steel Corp.*, 245 Fed. Appx. 184, 187 (3d Cir. 2007) (*quoting Duffy v. Paper Magic Group, Inc.*, 265 F.3d 163, 169 (3d Cir. 2001) (internal quotation marks omitted)).

In this case, Plaintiff merely asserts that she could not work for Manager Hetrick anymore after she was held accountable for lying about an incident at work. Plaintiff produced no evidence of ongoing harassment more severe and pervasive than that required to prove hostile work environment. *Brooks v. CBS Radio*, 2007 U.S. Dist. LEXIS 92213, *50 (E.D. Pa. Dec. 17, 2007). Plaintiff also produced no evidence that any alleged actions by Manager Hetrick were based on Plaintiff's race or discriminatory in any manner. Therefore, Plaintiff has not met her burden of proof and cannot establish that she was constructively discharged.

### D. Plaintiff's Opposition Fails to Identify a Protected Activity That Would Give Rise to a Prima Facie Case of Retaliation.

In her opposition, Plaintiff claims that she reported race discrimination to Walmart manager Misty Melton. Before Plaintiff's deposition, she had never referred to Ms. Melton in any manner. Plaintiff produced no documents proving that she ever spoke to Ms. Melton, nor did she depose Ms. Melton. More importantly, Plaintiff specifically admitted that she *never* told Ms. Melton that she thought she was being treated differently based on her race. *Id.* at 59:3-8. Mere complaints about stress at work do not constitute protected activities. There is simply no evidence that Plaintiff ever complained of discrimination based on her race or any other protected trait. Plaintiff made no mention of alleged discrimination until after she resigned. Plaintiff cannot establish a *prima facie* case of retaliation; therefore, Walmart is entitled to judgment in its favor as a matter of law.

Plaintiff is unable to prove her claims of race discrimination and retaliation and there is no genuine dispute of fact for trial. Therefore, Walmart respectfully requests that this Honorable Court enter judgment in Walmart's favor as a matter of law and dismiss Plaintiff's Complaint with prejudice.

Respectfully submitted,<br>
**McDONNELL & ASSOCIATES, P.C.**

By: /s/ Gwyneth R. Williams
Patrick J. McDonnell, Esquire
Attorney I.D. No.: 62310
Email: pmcdonnell@mcda-law.com
Gwyneth R. Williams, Esquire
Attorney I.D. No.: 319219
Email: gwilliams@mcda-law.com
500 Route 70 West
Cherry Hill, NJ 08002
(T) 856.429.5300 (F) 856.429.5314
*Attorneys for Defendant*

Dated: July 27, 2018